IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JAMIE FRENCH ) | |
| ) | |
| v. ) | No. 3:13-00670 |
| ) | JUDGE CAMPBELL |
| UNITED STATES OF AMERICA ) | |

MEMORANDUM

I. Introduction

Pending before the Court are a Motion/Memorandum To Vacate, Set Aside Or Correct Sentence Of Person In Federal Custody (Docket No. 1) and supporting documents (Docket Nos. 2, 14, 18), filed by the Movant/Petitioner (hereinafter "Petitioner"), pro se. The Government has filed a brief and exhibits in response (Docket Nos. 10, 19) to the Motion. For the reasons set forth herein, the Court concludes that Petitioner's Motion To Vacate is DENIED, and this action is DISMISSED.

II. Procedural and Factual Background

In the underlying criminal case, the Petitioner was charged in a one-count Indictment, along with four Co-Defendants, with participating in a conspiracy to possess with intent to distribute and to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. § 846. (Docket No. 60 in Case No. 3:10-00117). Petitioner pled guilty to the charge without a plea agreement. (Docket Nos. 208, 209, 248 in Case No. 3:10-00117).

Prior to sentencing, the Probation Office issued a Pre-Sentence Investigation Report (Docket No. 233 in Case No. 3:10-00117) in which the Petitioner's sentencing guideline range was estimated to be 210 to 262 months of imprisonment, based on a Total Offense Level of 35

and Criminal History Category III. (Id., at ¶¶ 32, 41). The Total Offense Level was calculated as follows: base offense level of 32; plus two points for possession of firearms; plus four points for being an organizer or leader; minus three points for acceptance of responsibility. (Id., at ¶¶ 24-32). Petitioner was assessed five criminal history points, but none of his prior convictions were felony offenses. (Id., at ¶¶ 34-41).

At sentencing, trial counsel objected to the four-point enhancement for being an organizer or leader, and argued that a variance was appropriate because the criminal history category overstated Petitioner's actual criminal history, and that the sentencing guideline range reflected an unwarranted disparity with that of Petitioner's Co-Defendants. (Transcript of Sentencing Hearing, at 3, 34-35 (Docket No. 235 in Case No. 3:10-00117)). Trial counsel also pointed out that the Petitioner cooperated on the night of his arrest and later made a proffer. (Id., at 35). The Government argued that the four-level enhancement was appropriate, and that the variance was not warranted. As for Petitioner's cooperation, the Government indicated that it was not substantial:

> On the night of his arrest, the defendant confessed. Wasn't cooperation. He confessed. It (sic) was caught red handed hauling marijuana out of the back of a tractor-trailer and surrounded by officers. I don't think at that time he provided phone numbers of people. He provided some names. At no time do I think – and Mr. Flanagan can correct me if I am wrong, but at no time do I think Mr. French provided us with numbers or offered to call people or call Mr. Zavala, either one of them, to do that. He did come in and give a proffer, but he was the last one to come in. Everybody else had already come in. By the time he came in, we had heard from everyone else, and there was very little that he could add.

(Id., at 35-36).

After hearing testimony offered by the Government, the Court determined that the four-level enhancement was appropriate. (Id., at 19-21). The Court also granted the Petitioner's

2

request for a variance based on an overstated criminal history, determining that Criminal History Category II was more appropriate. (Id., at 39-48). Consequently, the Court determined that the adjusted guideline sentencing range was 188 to 235 months of imprisonment, and sentenced the Petitioner to 188 months. (Id.; Docket Nos. 230, 231 in Case No. 3:10-00117).

Petitioner appealed his sentence to the Sixth Circuit, and contended that unwarranted disparity between his sentence and the sentences of the Co-Defendants rendered his sentence substantively unreasonable. (Docket No. 241 in Case No. 3:10-00117). The appeals court affirmed. (Id.)

### III. Analysis

A. The Petitioner's Claims

Petitioner contends that his conviction and sentence should be vacated because he received the ineffective assistance of counsel.

B. The Section 2255 Remedy

Section 2255 provides federal prisoners with a statutory mechanism by which to seek to have their sentence vacated, set aside or corrected.[1] The statute does not provide a remedy, however, for every error that may have been made in the proceedings leading to conviction. "'To

---

[1] 28 U.S.C. § 2255 states, in part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

3

warrant relief under section 2255, a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" Humphress v. United States, 398 F.3d 855, 858 (6th Cir. 2005)(quoting Griffin v. United States, 330 F.3d 733, 736 (6th Cir. 2003)).

An evidentiary hearing is not required if the record conclusively shows that the Petitioner is not entitled to relief. 28 U.S.C. § 2255(b); Ray v. United States, 721 F.3d 758, 761 (6th Cir. 2013); Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999). No hearing is required "if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" Id. Where the same judge considering the Section 2255 motion also presided over the underlying criminal proceedings, the judge may rely on his own recollection of those proceedings. Blackledge v. Allison, 431 U.S. 63, 97 S.Ct. 1621, 1629 n.4, 52 L.Ed.2d 136 (1977); Ray, 721 F.3d at 761.

The Court has reviewed the pleadings, briefs, transcripts, and records filed in Petitioner's underlying criminal case, as well as the pleadings, briefs, transcripts, and records filed by the parties in this case. The Court finds it unnecessary to hold an evidentiary hearing because these records conclusively establish that Petitioner is not entitled to relief on the issues raised.

C. Ineffective Assistance of Counsel

Petitioner argues that he received the ineffective assistance of trial counsel in the underlying criminal proceeding. In order to prevail on an ineffective assistance of counsel claim, the burden is on the Petitioner to show: (1) trial counsel's performance was not within the range of competence demanded of attorneys in criminal cases; and (2) actual prejudice resulted from the deficient performance. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80

4

L.Ed.2d 674 (1984); Cullen v. Pinholster, 131 S.Ct. 1388, 1403 (2011); Campbell v. United States, 364 F.3d 727, 730 (6th Cir. 2004).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland, 104 S.Ct. at 2052; Ludwig v. United States, 162 F.3d 456, 458 (6th Cir. 1998). In analyzing trial counsel's performance, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 104 S.Ct. at 2065.

In order to establish prejudice, the petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., at 2068.

Petitioner alleges that prior to trial, he indicated to trial counsel soon after his arrest that he wanted to cooperate with officials in an attempt to secure a reduced sentence. At a later time prior to trial, according to the Petitioner, trial counsel met with him to discuss a plea offer extended by the Government. The proposed plea offer that has been filed by the Petitioner includes the following terms: Petitioner is accountable for a total amount of 1,000 to 3,000 kilograms of marijuana; the recommended offense level is 34; Petitioner will be given the opportunity to cooperate and the Government may move for a reduced sentence based on that cooperation; and both parties waive certain appellate rights. (Docket No. 18, at 20-36). The offer indicates that there is no agreement as to the Petitioner's criminal history. (Id.)

Petitioner indicates that trial counsel advised him that the offer would not be in his best interest, and that the sentence he would receive if he accepted the offer would be higher than all

5

the Co-Defendants combined. Petitioner claims that trial counsel told him that something better would come along if he rejected the offer. According to the Petitioner, he relied on trial counsel's advice and rejected the offer. Petitioner argues that trial counsel's advice was erroneous because the offer was in his best interest, and a better offer was not extended by the Government. Petitioner claims that trial counsel subsequently told him that the plea offer was no longer available. Petitioner argues that he was required to enter an "open plea" and that trial counsel mistakenly estimated his sentencing guideline range to be 155-188 months.[2]

In Missouri v. Frye, ___ U.S. ___, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012) and Lafler v. Cooper, ___ U.S. ___, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012), the Supreme Court held that plea negotiations are a critical stage of criminal proceedings during which a defendant is entitled to the effective assistance of counsel. In Frye, the Court explained that trial counsel provides ineffective assistance when he or she fails to communicate and explain a formal plea offer to his or her client in a timely fashion. 132 S.Ct. at 1408.

In Lafler, the Court considered the appropriate remedy to be applied where trial counsel conveyed a formal plea offer to his client, but erroneously advised the client to reject the offer and proceed to trial because "the prosecution would be unable to establish his intent to murder Mundy because she had been shot below the waist." 132 S.Ct. at 1383. The Lafler Court explained that in order to demonstrate prejudice where trial counsel's erroneous advice leads a

---

[2] The Government has filed an affidavit of Petitioner's trial counsel in which he states that the Petitioner refused to completely cooperate with the Government because he said he "would never become a 'snitch.'" (Docket No. 10-1). According to trial counsel, the Petitioner was not satisfied with the Government's settlement offer, and exercised his right to an open plea in order to reserve his appeal rights. (Id.) The Court assumes the truth of Petitioner's allegations, however, and does not rely on the affidavit in reaching its decision herein.

defendant to reject a favorable plea offer, the defendant must show that "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." 132 S. Ct. at 1385.

Unlike Frye or Lafler, the Petitioner does not contend that trial counsel failed to timely convey a plea offer to him, or that he erroneously advised him to go to trial. Instead, Petitioner argues that trial counsel's forecast about the potential sentence he would receive by rejecting the plea offer and pursuing an open plea turned out to be wrong. That counsel's forecast turned out to be wrong, however, does not mean that his advice was incompetent based on the facts as counsel knew them at the time. The Supreme Court has counseled against such a conclusion:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

Strickland, 104 S. Ct. at 2065. The Court has pointed out that this deference is especially important in examining the plea negotiation process:

> Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks. . . These considerations make strict adherence to the Strickland standard all the more essential when reviewing the choices an attorney made at the plea bargain stage. Failure to respect the latitude Strickland requires can create at least two problems in the plea context. First, the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real. The art of negotiation is at least as nuanced as the art of trial advocacy and it presents questions farther removed from immediate judicial supervision. There are, moreover, special difficulties in evaluating the basis for counsel's

> judgment: An attorney often has insights borne of past dealings with the same
> prosecutor or court, and the record at the pretrial stage is never as full as it is after
> a trial. In determining how searching and exacting their review must be, habeas
> courts must respect their limited role in determining whether there was manifest
> deficiency in light of information then available to counsel.

Premo v. Moore, ___ U.S. ___, 131 S. Ct. 733, 741, 178 L. Ed. 2d 649 (2011).

Under this standard, the Petitioner has not demonstrated that trial counsel's alleged advice was deficient. Counsel's alleged concern about the disparity between the sentences of the Co-Defendants and the possible sentence under the plea offer would have been a legitimate one.[3] By pursuing an open plea, Petitioner was free to challenge the quantity of marijuana attributed to him, the leadership role enhancement, and the firearms enhancement. He was also free to argue for a variance from the applicable guideline sentencing range, and was able to retain his appeal rights.

Even if the Court assumes that trial counsel's advice was incompetent, however, Petitioner has not demonstrated that he was prejudiced under Lafler because it is not clear that his "conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Petitioner argues that under the plea offer, he would have been subject to an advisory guideline range of 188 to 235 months based on a Total Offense Level of 34 and Criminal History Category III. Petitioner argues that he would have received a variance from this range based on an overstated criminal history and substantial assistance. Given the Government's statements at sentencing about the Petitioner's

---

[3] As the Court noted at sentencing, Defendant Gaskins received a 41-month sentence; Defendant Gomez received a 27-month sentence, Defendant Ogg received a 46-month sentence, and Defendant Maldonado received a 37 month sentence. (Docket No. 235, at 42-44, in Case No. 3:10-00117). All of these Defendants, however, received sentencing reductions due to cooperation. (Id.)

late offer of meager cooperation, it is not at all certain that the Government would have filed a motion for substantial assistance, and even if it had done so, it is not at all certain that the Government would have recommended anything other than a minor reduction in the sentencing range – rather than the three-level reduction the Petitioner claims would have been applied. Even if the guideline sentencing range had been reduced, however, it is not certain that the Petitioner would have received a sentence at the bottom of that range.  Finally, the plea offer would have required the Petitioner to waive his right to appeal the sentence imposed by the Court, and the Court notes that Petitioner availed himself of that right in this case. Under these circumstances, the Petitioner has not demonstrated that the sentence under the plea offer would have been less severe than the sentence he received after the open plea.

For these reasons, the Court concludes that the Petitioner has failed to demonstrate that trial counsel was deficient, or that Petitioner was prejudiced by any deficiency.  Accordingly, Petitioner's ineffective assistance of counsel claim is without merit.

## IV. Conclusion

For the reasons set forth herein, the Court concludes that Petitioner is not entitled to relief under 28 U.S.C. § 2255.  Therefore, the Petitioner's Motion Under § 2255 is denied, and this action is dismissed.

Should the Petitioner give timely notice of an appeal from this Memorandum and accompanying Order, such notice shall be treated as a application for a certificate of appealability, 28 U.S.C. 2253(c), which will not issue because the Petitioner has failed to make a substantial showing of the denial of a constitutional right. Castro v. United States, 310 F.3d 900 (6th Cir. 2002).

9

It is so ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE